UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL ANDREW KITCHEN,

                Plaintiff,              Case No. 1:16-cv-190

v.                              Honorable Paul L. Maloney

RICK SNYDER et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Snyder, Washington, Palmer, the chief executive officer (CEO) of Corizon Health Incorporated (John Doe #1), the owners/shareholders of Corizon Health Incorporated (John Doe #2-John Doe #X), Simmons, Christiansen, and Frias. The Court will serve

the complaint against Defendants Corizon Health Incorporated, Grahn, Croll, Byrne, Slusher, Schultz, and Doyle.

**Discussion**

I.      Factual allegations

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC).  He currently resides at the Michigan Reformatory (RMI) in Ionia, Michigan.  He sues Michigan Governor Rick Snyder, MDOC Director Heidi Washington, Corizon Healthcare, Inc. (Corizon), Corizon CEO (John Doe #1), and Corizon owners and shareholders (John Doe #2-John Doe #X), together with the following RMI officials: Warden Carmen Palmer; Nurse Practitioner Corey Grahn; Nurses Anthony Croll, Teri L. Byrne, Heidi Slusher and (unknown) Schultz; Optometrist Thomas J. Doyle; Inspector (unknown) Simmons; Mailroom Clerk D. Christiansen; and Prison Counselor R. Frias.

On May 21, 2015, Plaintiff's right eye became irritated.  During the early morning hours on May 22, Plaintiff awoke with extreme pain on the right side of his face and head. The cause of Plaintiff's pain was a rapidly growing blistering rash on the right side of his face and head.

Plaintiff contacted a corrections officer for assistance.  The corrections officer contacted the facility's control center to summon medical aid.  Eventually a registered nurse, Robert Sheldon, responded.  Mr. Sheldon indicated to Plaintiff that it appeared he was suffering from shingles, medically known as herpes zoster.[1]  Plaintiff notes that there is a test to definitively

---

[1]Plaintiff describes herpes zoster as "an infection that is caused by the varicella-zoster virus, which is the same virus that causes chickenpox.  After contracting chickenpox, the varicella-zoster virus remains dormant in the body for several years without causing any symptoms.  Herpes zoster occurs when the varicella-zoster becomes active again." (Complaint, ECF No. 1, PageID.7.)

determine whether a rash is shingles, but that Defendant Corizon, its CEO, its shareholders (herein Defendants John Doe #2-John Doe #X), and the personnel in the health services unit at RMI[2] will not administer the test because it is expensive and the results might require expensive treatment for shingles.

Plaintiff was summoned to the RMI health services unit in the morning.  Defendant Slusher visually inspected Plaintiff's face and head and asked him several questions.  She showed Plaintiff pictures of persons with shingles.  Plaintiff alleges that given her years of experience, Defendant Slusher knew Plaintiff had shingles.

Defendant Slusher called over Defendant Grahn to examine Plaintiff.  Defendant Grahn stood approximately five feet away from Plaintiff as he visually inspected Plaintiff's face and head.  Plaintiff states that Defendant Grahn also recognized that Plaintiff had shingles even though he did not perform the test.  Nonetheless, Defendant Grahn ordered Defendant Slusher to "stain" Plaintiff's right eye.  Defendant Slusher followed Defendant Grahn's order, stained Plaintiff's right eye, issued Plaintiff some eyedrops, and ordered Plaintiff back to his assigned quarters.

Plaintiff's condition worsened over the course of the day.  The rash and blisters spread and his face continued to swell.  Plaintiff describes his pain as blinding.  The corrections officer on Plaintiff's floor made repeated checks on Plaintiff during the night and into the morning of May 23.  The floor officer was sufficiently concerned to raise the issue with his supervisor.  The supervisor contacted the health services unit.

---

[2]Plaintiff alleges that Defendants Grahn, Croll, Byrne, Slusher, and Schultz, though they work in the health services unit at RMI, are all employees of Defendant Corizon.  (ECF No. 1, PageID.5, 8-9.)  Defendant Corizon provides health care services to Michigan prisoners pursuant to an agreement with the MDOC.  (*Id.*, PageID.33.)

Defendant Croll called Plaintiff to the health services unit at 10:30 a.m. on May 23. Plaintiff asked Defendant Croll to send him to the emergency room at the local hospital. Defendant Croll refused. Instead, Defendant Croll ordered Plaintiff back to his assigned quarters.

Plaintiff's condition continued to worsen. On May 24, corrections officers advised Plaintiff to raise the issue with a lieutenant. Plaintiff did so. The lieutenant contacted the health services unit. Defendant Croll again summoned Plaintiff to the health services unit. This time, Defendant Croll agreed to send Plaintiff to the emergency room.

Plaintiff was transported to Sparrow Ionia Hospital. He was examined by two doctors and diagnosed with shingles. Plaintiff was injected twice with morphine and then transported by ambulance to the Ingham Regional Medical Center in Lansing, Michigan.

Plaintiff was admitted to the Ingham Medical Center. He was quarantined and provided medication to treat the shingles virus and to alleviate the extreme pain. He was discharged and returned to RMI on the evening of May 28. The physicians at the Ingham Medical Center prescribed continued pharmaceutical treatment for Plaintiff to reduce his pain, return the virus to a state of dormancy, and to aid in the restoration of his vision.

Plaintiff was provided two copies of the discharge paperwork, one for the staff at RMI and one for Plaintiff. He was not permitted to hold the papers during transport. Upon arrival at RMI, the transporting officers gave both copies of the paperwork to Defendant Byrne in the RMI health services unit.[3]   Defendant Byrne informed Plaintiff that she would be cancelling the

---

[3]Plaintiff never received his copy of the discharge paperwork. Eventually, he obtained a copy of the documents by formally requesting them from the health services unit and paying for copies to be made.

prescriptions ordered by the Ingham Medical Center doctors and then ordered him to be quarantined in the RMI segregation unit.

Plaintiff states the quarantine was unnecessary because he was no longer contagious. Plaintiff alleges that Defendant Heidi Washington, director of the MDOC, and Defendant Carmen Palmer, warden at RMI, failed to train and instruct their staff and that such failure to train resulted in Defendant Byrne improperly placing Plaintiff in quarantine. Plaintiff further contends that Defendant Washington and Defendant Palmer failed to develop policies to govern the placement of prisoners in quarantine.

The segregation cell where Plaintiff was quarantined had no windows, ventilation, or sunlight. The cell was also infested with mice. Plaintiff was not permitted to have any property while he was quarantined. Plaintiff alleges that the conditions in segregation caused him mental anguish and emotional distress and left him depressed. Although Plaintiff was ordered to the segregation cell for the stated purpose of quarantine, he was never quarantined in a strict sense. Plaintiff mingled with other segregation prisoners.

During Plaintiff's first night in the segregation cell, he suffered extreme pain. A corrections officer contacted the health services unit and spoke with Defendant Schultz on Plaintiff's behalf. Defendant Schultz refused to provide any medication.

The next day, May 29, Defendant Grahn summoned Plaintiff to the health services unit. Defendant Grahn examined Plaintiff and informed him that the quarantine would be lifted and he would be returned to the general prison population, but only if Plaintiff would go on "meals-in" status. Put simply, Plaintiff would be required to eat his breakfast, lunch, and supper in his assigned quarters instead of the dining hall.

Defendant Grahn cancelled all of the prescriptions ordered by the Ingham Medical Center except the prescription for Acyclovir tablets. Plaintiff objected to the cancellation of the other prescriptions and expressed his intention to file complaints to challenge the cancellation of the prescriptions. Defendant Grahn seemed irritated and angered by Plaintiff's expressed intention.

Plaintiff returned to the segregation cell and awaited his release to the general prison population. The corrections officers there, however, informed Plaintiff that Defendant Grahn had "changed his mind." Plaintiff remained in the segregation cell until the evening of June 1.

On June 2, 2015, Plaintiff met with Defendant Thomas J. Doyle, an optometrist, for a cornea evaluation. Defendant Doyle discovered an ulcer on the cornea of Plaintiff's right eye. Defendant Doyle examined Plaintiff again on November 3. During the examination, Defendant Doyle informed Plaintiff that he had prescribed medication for Plaintiff's corneal ulcer after the June evaluation. Plaintiff never received the prescribed medication. Plaintiff contends that Defendant Doyle should have known Plaintiff was not provided the treatment by virtue of the medical kites and grievances that Plaintiff filed. Following the November 3 examination, Defendant Doyle prescribed eyedrops to treat Plaintiff's corneal ulcer.

The limited treatment Plaintiff received for shingles was not sufficient. He suffered extreme pain for an extended period of time, he is permanently scarred, and his vision has been compromised. Moreover, in the process of preparing the claims relating to his medical care, Plaintiff encountered additional difficulties that he contends give rise to additional causes of action.

Plaintiff is indigent. He has been granted status as a pauper in this action. He would like to proceed with a state-law claim for medical malpractice; however, he claims he is barred by a Michigan statute. Section 600.2912d of the Michigan Compiled Laws provides:

> [T]he plaintiff in an action alleging medical malpractice . . shall file with the complaint an affidavit of merit signed by a health professional who . . . meets the requirements for an expert witness . . . . The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
>
> (a) The applicable standard of practice or care.
>
> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.
>
> (c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.
>
> (d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

MICH. COMP. LAWS § 600.2912d(1). Plaintiff contends that he cannot afford a medical expert and, thus, has been unconstitutionally denied access to the courts.

Plaintiff asked his mother to assist in the investigation of his claims. She submitted a Freedom of Information Act request to the MDOC. The MDOC provided her logbooks completed by RMI corrections officers that related to the time frame that Plaintiff was infected with the virus. Plaintiff states that the logbooks included entries referencing his illness as well as the corrections officers' attempts to aid Plaintiff. Plaintiff's mother mailed the logbook excerpts to him.

In early October, Defendant D. Christiansen, a mailroom clerk at RMI, intercepted the logbook excerpts. She discussed the matter with Defendant Simmons, an Inspector at RMI. Defendant Simmons ordered Defendant Christiansen to reject the material as a threat to the safety and security of the institution. Plaintiff objected to the confiscation of the logbook excerpts and requested an administrative hearing.

-7-

On October 19, Defendant Frias, a prison counselor, conducted an administrative hearing with regard to the logbook excerpts. Plaintiff objected to Defendant Frias as a hearing officer, claiming that Defendant Frias was a subordinate of Defendant Simmons and, therefore, could not be impartial. Defendant Frias conducted the hearing, concluded the material was a threat to the security of the facility, and ordered that the logbook excerpts not be delivered to Plaintiff.

Plaintiff appealed Defendant Frias' decision. On November 13, prison counselor David Reed considered the appeal. Mr. Reed upheld Defendant Frias' decision. Plaintiff contends that Mr. Reed was also a subordinate of Defendant Simmons and, therefore, Mr. Reed was not impartial. Following the appeal decision, "Defendant Christiansen destroyed the [logbook excerpts] rather than allow Plaintiff to return the material to his mother." (ECF No. 1, PageID.42.)

## II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff contends that the Defendants' actions or inactions have infringed several different constitutional rights.  He argues that the "affidavit of merit" requirement for medical malpractice cases in Michigan violates his First Amendment right of access to the courts.  Plaintiff states that the Defendants' deliberate indifference to his serious medical needs and the unbearable conditions in segregation violate his Eighth Amendment right to be free of cruel and unusual punishment.  Plaintiff also complains that the confiscation of his discharge papers, assignment to segregation, and destruction of the mail from his mother violated his right to due process before a deprivation of liberty or property as guaranteed by the Fourteenth Amendment.  Petitioner also calls

upon the Court to exercise its supplemental jurisdiction over state law claims for abuse of process, false imprisonment, and intentional infliction of emotional distress.

A.   First Amendment – access to the courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). That right, however, is not without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992).   An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).  Here, Plaintiff contends he is unable to file a medical malpractice complaint because of the Michigan statute.

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

-10-

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals [of the prisoner's conviction and/or sentence], habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Plaintiff does not allege interference with his access to the courts for those purposes. Instead, he alleges only that he has been denied access to the courts to raise a state-law medical malpractice claim. Accordingly, he has failed to state a viable claim for violation of his First Amendment rights.

B.     Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir.

-11-

2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

### 1.     Quarantine in segregation

Plaintiff claims that the conditions and restrictions imposed upon him as a result of his four- day quarantine in segregation have caused him mental and emotional distress in violation of his Eighth Amendment rights.  Plaintiff states that the segregation cell was dark, infested with mice, and had no windows, ventilation, or sunlight.  He also complains he was not permitted to have any personal property while quarantined.  The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103(1976).  To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.  Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.*  Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4,

-12-

1999).   Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements.  The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of segregation cannot establish an Eighth Amendment violation.  *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).  Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury resulting from his quarantine in a segregation cell.  *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.  As a result, Plaintiff fails to state an Eighth Amendment claim against any of the Defendants with respect to his brief stay in segregation.

### 2.     Lack of medical care

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle*, 429 U.S. at 103-04.  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  Plaintiff's complaint sufficiently states a claim against Defendants Corizon Health Incorporated, Corey Grahn, Anthony Croll, Teri L. Byrne, Heidi Slusher, Nurse (unknown) Schultz, and Thomas J. Doyle, for failure to provide medical care in violation of the Eighth Amendment.

### 3.     Respondeat superior

A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability.  *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir.

2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  As the Sixth Circuit has repeatedly emphasized:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior.  There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).  Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Here Plaintiff contends that Corizon's chief executive officer and shareholders are liable for the other Defendants' failures to provide care because the corporate profit motive compelled the other Defendants to deny medical care to Plaintiff.  A generalized statement of a desire for profit is not sufficent.  *See, i.e., Broyles v. Correctional Medical Services, Inc.*, No. 08-1368, 2009 WL 3154241 at *2 (6th Cir. Jan. 23, 2009) ("Broyles alleged that CMS failed to properly train its personnel on written CMS policies, failed to discipline personnel who violated its written policies, and violated its written policies by permitting medical decisions to be made based upon costs. Broyles's bare allegations of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief.  Accordingly, the district court properly dismissed Broyles's claims against CMS for failure to state a claim upon which relief could be granted.") (citation omitted);

*Crawford v. Mich. Dep't of Corr.*, No. 2:09–cv–7, 2010 WL 1424246, at *5 (W.D. Mich. Mar. 31, 2010) ("Plaintiff has pleaded no facts supporting his allegation that, pursuant to contract, Plaintiff's medical treatments were based upon cost concerns."); *Moffat v. Mich. Dep't of Corr.*, Civil Action No. 09–14696, 2010 WL 3906115, at *9 n. 11 (E.D. Mich. May 21, 2010) (allegation that "CMS had a policy of denying treatment in order to maximize profits" insufficient to survive motion to dismiss without supporting factual allegations) (report and recommendation), *adopted* 2010 WL 3905354 (E.D. Mich. Sept. 27, 2010).

Plaintiff's claims against Defendant Washington and Palmer fail for the same reason. Plaintiff alleges that Defendants Washington and Palmer are liable for the actions of their subordinates because of a failure to adopt sufficient policies or to train their employees. "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee*, 199 F.3d at 300 (citing *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

C.     Fourteenth Amendment

Plaintiff alleges Defendants violated his Fourteenth Amendment right to due process in three different ways: (1) he was deprived of his liberty when he was quarantined in segregation; (2) he was deprived of his property when the RMI health services unit refused to provide him his copy of his hospital discharge papers; and (3) he was deprived of his property when the logbooks excerpts mailed to him by his mother were destroyed. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due

-15-

process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

1.      Segregation

Plaintiff's due process claim regarding his quarantine in segregation fails at the first step. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme

-16-

circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey*, 524 F.3d at 794.

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir.1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest). Plaintiff has failed to allege the sort of atypical and significant hardship that would warrant due process protection before his quarantine in segregation.

2.      Discharge papers

-17-

Plaintiff's discharge papers constitute property and, therefore, the confiscation of that property by the RMI health services unit constitutes interference with an interest protected by the due process clause. Moreover, the interference with Plaintiff's property interest occurred without notice, an opportunity to be heard, or any process at all. Nonetheless, Plaintiff claims fails because it is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property

loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; MDOC

Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions

in the Court of Claims asserting tort or contract claims "against the state and any of its departments,

commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The

Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for

deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a

state-court action would not afford him complete relief for the deprivation, either negligent or

intentional, of his personal property.  Accordingly, his due process claim relating to confiscation of

his hospital discharge papers will be dismissed.

3.      The logbook excerpts

Plaintiff contends that he was deprived of the logbook excerpts without due process

of law.  After Defendant Simmons initially decided that the logbooks excerpts should not be

delivered, Plaintiff acknowledges that he was provided notice and an opportunity to be heard.  He

objects because he contends the decision-makers, Defendant Frias at the initial hearing and Mr. Reed

on appeal, both prison counselors, were partial in favor of Defendant Simmons because Defendant

Simmons outranked them. Defendant Frias and Mr. Reed upheld the decision of Defendant Simmons

that the logbook excerpts should not be delivered to Plaintiff because they contained information

about other prisoners and unit functions.  But Plaintiff was not deprived of the property until

"Defendant Christiansen destroyed the material rather than allow Plaintiff to return the material to

his mother."  (ECF No. 1, PageID.42.)  There is no allegation that Defendant Frias or Mr. Reed

ordered the destruction.   Based on the allegations in the complaint the destruction was a

discretionary, intentional decision of Defendant Christiansen.  Accordingly, Plaintiff must satisfy

the requirement of *Parratt*, 451 U.S. at 527.  He has failed to do so.  He has failed to allege that a

state-court action would not afford him complete relief for the deprivation.  Accordingly, his claim is properly dismissed.  *Brooks*, 751 F.2d at 197.

>        D.        State law claims

Plaintiff alleges three state-law tort claims: abuse of process, false imprisonment, and intentional infliction of emotional distress.

>        1.        Abuse of process

Plaintiff alleges that Defendants are liable for abuse of process because: (a) they misused procedure to confine him in segregation and then to continue his confinement in segregation and (b) they misused procedure to confiscate Plaintiff's mail.  Plaintiff has failed to properly state either claim.

A claim for abuse of process under Michigan law has two essential elements: "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding."  *Friedman v. Dozorc*, 312 N.W.2d 585, 594 (Mich. 1981).  Plaintiff's abuse of process claim with respect to his confinement in segregation fails because he has not alleged any improper act in the use of process.  Indeed, his allegations suggest that the lack of any established process is the very reason he was unjustly quarantined in segregation.

With respect to Plaintiff's claim regarding the destruction of the logbook excerpts, there was a use of process, albeit an administrative process, but Plaintiff has failed to allege any ulterior purpose.  The only purpose Plaintiff has alleged is "to confiscate Plaintiff's mail . . . ." (ECF No. 1, PageID.49.)  That is the express purpose of the procedural device employed and cannot support an abuse of process claim.

Plaintiff alleges only that the process itself was flawed.  That is not enough. Procedural irregularities in the use of a process for legitimate aims is insufficient to state a claim for

abuse of process.  *See Vallance v. Brewbaker*, 411 N.W.2d 808, 811 (Mich. Ct. App. 1987) ("[W]e emphasize that procedural irregularities do not constitute a basis for the tort of abuse of process, which is concerned with the proper use of procedure for illegitimate aims.").

### 2.      False Imprisonment

"'The elements of false imprisonment are (1) an act committed with the intention of confining another; (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement.'" *Bletz v. Gribble*, 641 F.3d 743, 758 (6th Cir. 2011) (*citing Walsh v. Taylor*, 689 N.W.2d 506, 514 (Mich. Ct. App. 2004)).  "The 'substance of a false imprisonment claim is that the imprisonment is false because it occurs without right or authority.'" *Blount v. McQuiggin*, No. 1:09-cv-58, 2011 WL 1434911 at *4 (W.D. Mich. Mar. 23, 2011) (citing *Hart v. Danak*, 2010 WL 1404431 at *2 (Mich. Ct. App. Apr. 8, 2010)).

Here, Plaintiff does not challenge the lawfulness of his confinement at RMI.  He complains only that he was improperly placed in segregation.  But, placement in segregation is part and parcel of his lawful confinement.  Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9.  "[T]hat a duly convicted and incarcerated person "unlawfully" assigned to administrative segregation has suffered a false imprisonment . . . has not been recognized by the Michigan judiciary." *Clark v. Michigan Dept. of Corrections*, 555 F. Supp. 512, 517 (E.D. Mich. 1982). Accordingly, Plaintiff has failed to state a claim for false imprisonment.

### 3.      Intentional Infliction of Emotional Distress

Finally, Plaintiff contends that the Defendants are liable for intentional infliction of emotional distress.  "This claim requires a plaintiff to show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Jones v. Muskegon*

-21-

*County*, 625 F.3d 935, 948 (6th Cir. 2010). Plaintiff's allegations that Defendants Corizon, Grahn, Croll, Byrne, Slusher, Schultz, and Doyle were deliberately indifferent to his serious medical needs, suffice to state a claim for intentional infliction of emotional distress.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Rick Snyder, Heidi Washington, Carmen Palmer, the chief executive officer of Corizon Health Incorporated ( John Doe #1), the owners/shareholders of Corizon Health Incorporated (John Doe #2-John Doe #X), (unknown) Simmons, D. Christiansen, and R. Frias. will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Corizon Health Incorporated, Corey Grahn, Anthony Croll, Teri L. Byrne, Heidi Slusher, Nurse (unknown) Schultz, and Thomas J. Doyle with respect to Plaintiff's claims (1) that Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment and (2) that Defendants are liable for intentional infliction of emotional distress.

An Order consistent with this Opinion will be entered.

Dated:    April 20, 2016                     /s/ Paul L. Maloney
                                             Paul L. Maloney
                                             United States District Judge