UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL ANDREW KITCHEN,⠀⠀⠀⠀)
# 189265,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀)⠀⠀⠀⠀Case No. 1:16-cv-190
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Honorable Paul L. Maloney
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
CORIZON HEALTH, INC., et al.,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀)
_____)

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a *pro se* plaintiff under 42 U.S.C. § 1983. Plaintiff is an inmate at the Carson City Correctional Facility. (ECF No. 150). This lawsuit arises out of conditions of plaintiff's confinement at the Michigan Reformatory (RMI) between May 21, 2015 and November 3, 2015. On April 20, 2016, the Court dismissed the majority of plaintiff's purported claims on initial screening under 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c). (ECF No. 10, 11).

Plaintiff's Eighth Amendment claims that the following medical care providers at RMI failed to provide appropriate medical treatment for his shingles survived initial screening: Corizon Health, Incorporated, Nurse Practitioner Corey Grahn, Nurse Anthony Croll, Nurse Teri L. Byrne, Nurse Heidi Slusher, Nurse (unknown) Schultz, and Optometrist Thomas Doyle. The Court also permitted a state law claim of intentional infliction of emotional distress to proceed against the same defendants.

(ECF No. 10 at PageID.108). On May 27, 2016, the Court determined that plaintiff had also alleged sufficient facts to state a First Amendment retaliation claim against defendant Grahn. (ECF No. 16, 17).

The matter is now before the Court on a motion for summary judgment by MDOC defendants Croll, Byrne, and Slusher based on the affirmative defense provided by 42 U.S.C. § 1997e(a). (ECF No. 110). Also before the Court is a motion by defendants Corizon Health, Inc., and Nurse Practitioner Corey Grahn (collectively referred to as the Corizon defendants) for partial dismissal of plaintiff's First Amended Complaint under Rule 12(b)(6) and for partial summary judgment under Rule 56 based on the affirmative defense provided by 42 U.S.C. § 1997e(a). (ECF No. 115). Plaintiff opposes the defendants' motions. (ECF No. 45, 46, 53, 54, 61, 62, 117, 119)

For the reasons set forth herein, I recommend that the Corizon defendants' motion for partial dismissal and partial summary judgment (ECF No. 115) be granted in part and denied in part. I recommend that the Rule 12(b)(6) portion of the motion be granted. I recommend that the summary judgment portion of the Corizon defendants' motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a) be granted as to defendant Corizon Health, Inc., and denied as to defendant Grahn. I recommend that plaintiff's purported state law claims against all defendants be dismissed pursuant to the statutory authority provided by

28 U.S.C. §§ 1915(e)(2), 1915A. I recommend that the motion for summary judgment by MDOC defendants Croll, Byrne, and Slusher (ECF No. 110) be denied.

If this report and recommendation is adopted in its entirety, plaintiff's remaining claims are those for damages against defendants Grahn, Croll, Byrne, Slusher, Schultz, and Doyle under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.

## Procedural History

A brief overview of the procedural history of this case is necessary in order to place the claims being asserted by plaintiff and the motions before the Court in context. On February 1, 2016, plaintiff filed his complaint in the Eastern District of Michigan. (ECF No. 1). On February 23, 2016, the case was transferred here. (ECF No. 4). Plaintiff's initial complaint was over fifty pages long. It included a long list of defendants and was divided into eleven counts. (ECF No. 1).

On April 20, 2016, the Court entered its twenty-two page opinion on initial screening and its order for partial service. (ECF No. 10, 11). The Court held that all plaintiff's claims against defendants "Rick Snyder, Heidi Washington, Carmen Palmer, the chief executive officer of Corizon Health, Incorporated (John Doe #1), the owners/shareholders of Corizon Health Incorporated (John Joe # 2-John Doe #X), unknown Simmins, D. Christiansen, and R. Frias" were "DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c)." (ECF No. 11 at

PageID.109). The Court ordered service against "Defendants Corizon Health Incorporated, Corey Grahn, Anthony Croll, Teri L. Byrne, Heidi Slusher, Nurse (unknown) Schultz, and Thomas J. Doyle with respect to Plaintiff's claims (1) that Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment and (2) that defendants are liable for intentional infliction of emotional distress." (ECF No. 10 at PageID.108).

On May 5, 2016, plaintiff filed a motion for relief from judgment and to partially stay the order dismissing plaintiff's claims that failed to survive initial screening. Although no judgment had been entered, plaintiff's motion was indulgently considered as a motion for reconsideration of three aspects of the Court's April 20, 2016, order. Plaintiff's request for a stay based on plaintiff's belief that amendment could cure any pleading deficiencies was denied. The Court held that plaintiff had "not presented any palpable defect in the Court's April 20, 2016 opinion and order." (ECF No. 16, at PageID.140). However, the Court noted that once an amended complaint was filed, plaintiff could seek "reconsideration of the Court's April 20, 2016 order in light of his amended pleading." (ECF No. 16 at PageID.140). Plaintiff filed an amended pleading, but he never filed a motion seeking reconsideration of the Court's order.[1] Thus, with the sole exception of a First

---

[1] Plaintiff's First Amended Complaint (ECF No. 40) includes defendants and purported claims that were dismissed on initial screening. Those claims have not been reintroduced into this case. Plaintiff was advised that if he wanted to seek to reintroduce claims that had been dismissed on screening, he needed to first file his amended complaint and then file a motion for reconsideration of the Court's April 20,

Amendment retaliation claim against Grahn, all plaintiff's claims dismissed on initial screening remain dismissed with prejudice. The Court found that "plaintiff's manner of presenting his claims misled the Court with regard to his intention to pursue a First Amendment retaliation claim." (ECF No. 16 at PageID.142). The Court held that plaintiff's complaint alleged a First Amendment retaliation claim against defendant Grahn and ordered service against her. (ECF No. 16, 17). Plaintiff seeks an award of damages. (ECF No. 40 at PageID.409).

## I.     Rule 12(b)(6) Motion for Partial Dismissal by Corizon Defendants

The Corizon defendants seek partial dismissal of plaintiff's First Amended Complaint under Rule 12(b)(6) and partial summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a). They argue that plaintiff's Amended Complaint fails to state a claim upon which relief can be granted because plaintiff's claims of ordinary negligence, the intentional infliction of emotional distress, abuse of process, and unlawful imprisonment sound in medical malpractice and the defendants cannot be vicariously liable for the constitutional violations of

---

2016, order "in light of his amended pleading." (ECF No. 16 at PageID.140). Plaintiff never filed such a motion. Thus, he has presented no developed argument explaining in detail the changes that he has made and why specific claims previously dismissed should be allowed back into this case. It is assumed for present purposes that plaintiff was simply attempting to preserve for appellate review his disagreements with the Court's opinions and orders for partial service.

Although plaintiff's amended pleading invokes diversity jurisdiction under 28 U.S.C. § 1332 (ECF No. 40 at ¶ 1, PageID.380) the lack of complete diversity is patent. (ECF No. 40 at ¶¶ 6-9, PageID.381-82). Plaintiff's invocation of Michigan laws will be considered as a request that the Court, in its discretion, exercise supplemental jurisdiction.

others under 42 U.S.C. § 1983. (ECF No. 115 at PageID.1195-96). Plaintiff opposes the Corizon defendants' Rule 12(b)(6) motion. Upon review, I recommend that the Corizon defendants' Rule 12(b)(6) motion for partial dismissal be granted.

A. Rule 12(b)(6) Standard

A complaint that fails to allege " 'enough facts to state a claim to relief that is plausible on its face' " must be dismissed for failure to state a claim. *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.,* 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A plaintiff falls short if he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]' " *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In applying these standards, the court must read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's factual allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

B.    Factual Allegations

Plaintiff alleges that in May 2015, he was an inmate at the Michigan Reformatory (RMI).[2]  (¶ 4, PageID.381).   He states that, on or about May 21, 2015, his right eye became red and irritated.   (¶ 11, PageID.382).

On May 22, 2015, during the early morning hours, plaintiff was examined by Nurse Sheldon.   Sheldon indicated that plaintiff might have shingles and scheduled him for an examination at RMI's Health Services Unit (HSU).   At approximately 10 a.m. that morning, plaintiff was examined by Nurse Slusher.   Plaintiff alleges that Slusher recognized that he had shingles, but in order to save money, failed to administer unspecified tests or treatments for his condition.   Slusher did contact Nurse Practitioner Grahn and asked him to take a look at the rash-like condition on plaintiff's face.   (¶¶ 25-32, PageID.384-85)

Nurse Practitioner Cory Grahn is employed by Corizon.   He examined plaintiff at about 1 p.m. on May 22, 2015.   According to plaintiff, Grahn should have recognized that he had shingles based on his appearance.   Plaintiff believes that Grahn feigned ignorance so he could save money and would not have to treat plaintiff or recommend treatment. Plaintiff alleges that Grahn sent him back to his cell without providing unspecified treatment or identifying plaintiff's condition.   (¶¶ 33-36, PageID.385-86).

---

[2] All the citations in this section are to plaintiff's Frist Amended Complaint (ECF No. 40).

Plaintiff alleges that, on May 23, 2015, at approximately 10:30 a.m., he was examined by Nurse Croll. Croll refused plaintiff's request to be transported outside the prison for treatment. Plaintiff states that Nurse Croll sought to maximize cost savings when he failed to provide unspecified tests and treatment and declined plaintiff's request to be transported outside the prison for treatment. The next day, May 24, 2015, plaintiff returned for another examination by Croll. Nurse Croll determined that plaintiff's condition was serious enough to warrant transporting him outside the prison for medical evaluation and treatment. (¶¶ 36-50, PageID.386-89).

Plaintiff was immediately transported to Sparrow Hospital where emergency room doctors diagnosed plaintiff's medical condition as shingles. Plaintiff was transported to the Ingham Medical Center where plaintiff was placed in a quarantine unit and he received treatment. On May 28, 2015, plaintiff was discharged, taken back to prison, and at the direction of Nurse Byrne, housed in ICF's quarantine unit. Plaintiff alleges that he was not infectious when he returned to prison. He alleges that on May 28, 2015, Nurse Burne "canceled and confiscated" medications that had been prescribed for plaintiff at the Ingham Medical Center. Plaintiff alleges that he made a call to Nurse Schultz and that Schultz refused to provide him with medications that had been prescribed outside the prison. (¶¶ 50-68, PageID.388-92).

Plaintiff alleges that, on May 29, 2015, he met with Nurse Practitioner Grahn, who approved plaintiff's meals and somehow expressed an intention to lift the

quarantine. Grahn examined plaintiff and determined that plaintiff should continue receiving Acyclovir and discontinued other medications that had been prescribed at the Ingham Medical Center. Plaintiff disagreed with Grahn's decision and related his intent to file a grievance against Grahn because he had decided to cancel the prescriptions. Plaintiff states that he was escorted back to his quarantine cell. Plaintiff alleges that Grahn changed his mind and declined to release plaintiff from quarantine because plaintiff threatened to file a grievance. (¶¶ 69-83, PageID.392-95).

On June 2, 2015, plaintiff was examined by Optometrist Doyle. Plaintiff alleges that Dr. Doyle found an ulcer on the cornea of his right eye and he attributed it to plaintiff's shingles. Plaintiff states that the optometrist should have given him medication, but failed to do so. Plaintiff states that Doyle next examined him on November 3, 2015. Plaintiff claims that Doyle reported that he had prescribed medication in June 2015. Plaintiff complains that Doyle did not ensure that plaintiff received the medication he had prescribed. (¶¶ 84-94, PageID.395-97).

Plaintiff alleges that Corizon Health is a corporation that provides medical care to Michigan's prisoners through its employees. Plaintiff attributes perceived deficiencies in the medical care that he received and injuries to a policy or practice of Corizon intended to maximize cost savings. He alleges that he suffered damages as a result of Corizon's policies. (¶¶ 5, 24, 34, 42, 44, 95-104, PageID.381, 384-88, 397-400).

C. <u>Discussion</u>

As noted in the Court's earlier opinion, "A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of *respondeat superior* liability." (ECF No. 10, PageID.99). To the extent that plaintiff seeks to hold the Corizon defendants liable for the acts of others on the basis of *respondeat superior*, plaintiff fails to state a claim on which relief can be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

All plaintiff's state tort claims, other than the claims of intentional infliction of emotional distress, were dismissed on initial screening. As previously noted herein, the claims were dismissed with prejudice and were not reintroduced by the mere filing of plaintiff's amended pleading. Even assuming that the tort claims had been reintroduced, I would recommend dismissal for failure to state a claim.[3] I find that plaintiff's purported abuse of process and false imprisonment claims (Counts VIII and IX) fail to state a claim upon which relief can be granted for the reasons stated in the Court's April 20, 2016, opinion. (ECF No. 10 at PageID.106-07).

I find that plaintiff's "negligence" and "vicarious liability" claims (Counts III, IV, V, VII, and X) fail to state a claim upon which relief can be granted. Although plaintiff attempted to plead around the requirements of Michigan's malpractice laws by labeling his claims as tort claims for negligence and "vicarious liability," his claims

_____

[3] The recommendation would be made pursuant to the statutory authority provided by 28 U.S.C. §§ 1915(e)(2) and 1915A on the state law claims not covered by the motion to dismiss made by the Corizon defendants.

that he did not receive appropriate medical treatment "clearly sound[] in medical malpractice." *See Simmons v. Rogers*, No. 1:14-cv-1242, 2017 WL 1179376, at *5 (W.D. Mich. Mar. 30, 2017). "[R]espondeat superior is a theory of vicarious liability and not a separate cause of action." *Urbanec v. Multi-Financial Securities Corp.*, No. 10-12869, 2010 WL 4739441, at *8 (E.D. Mich. Nov. 16, 2010); *see Arora v. Henry Ford Health Sys.*, No. 2:15-cv-13137, 2017 WL 4119946, at *6 (E.D. Mich. Sept. 18, 2017) ("*Respondeat superior* is not an independent cause of action[.]").

Plaintiff's purported negligence and vicarious liability claims are "subject to the prerequisites imposed under Michigan law for the bringing of a malpractice claim, including that the complaint be accompanied by an affidavit of merit signed by a health professional attesting to defendant['s] failure to meet the standard of care. MICH. COMP. LAWS § 600.2912d(1). Plaintiff has failed to provide such [an] affidavit ..., a failure that requires dismissal[.]" *Hamer v. County of Kent*, No. 1:13-cv-504, 2013 WL 8479414, at *9 (W.D. Mich. Nov. 6, 2013); *see also Miller v. Westcomb*, No. 2:14-cv-45, 2016 WL 4136536, at *4 (W.D. Mich. Aug. 4, 2016).

Counts I and II of plaintiff's amended pleading contain references to Michigan's constitution. (Amended Complaint ¶¶ 103, 108, PageID.399-401). There is no state law claim for damages against defendants based on alleged violations of Michigan's constitution. *See Jones v. Powell*, 462 Mich. 329, 612 N.W.2d 423, 426-27 (2000); *see also Jones v. City of Oak Park*, No. 15-cv-12968, 2017

WL 3727111, at *8 (E.D. Mich. Aug. 30, 2017); *Umbarger v. Michigan*, No. 1:12-cv-603, 2013 WL 5538766, at *5 (W.D. Mich. Oct. 8, 2013) (collecting cases).

Upon review of plaintiff's amended pleading, I find that plaintiff did not plead facts sufficient to support a claim for Intentional Infliction of Emotional Distress against any defendant. Plaintiff's disagreement with the course of medical treatment is not conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Howard v. Calhoun County*, 148 F. Supp. 2d 883, 892 (W.D. Mich. May 10, 2001). Mere deficiencies in medical care "do not rise to the level of extreme and outrageous conduct." *Jones v. Muskegon County*, 625 F.3d 935, 948 (6th Cir. 2010). Thus, I recommend that plaintiff's purported claims of intentional infliction of emotional distress (Count XI) also be dismissed for failure to state a claim upon which relief can be granted pursuant to the statutory authority provided by 28 U.S.C. §§ 1915(e)(2) and 1915A.

If this portion of the report and recommendation is adopted in its entirety, plaintiff's remaining claims will be his Eighth Amendment claims under 42 U.S.C. § 1983 against defendants Corizon Health, Inc., Grahn, Croll, Byrne, Slusher, Schultz, and Doyle and his First Amendment retaliation claim against defendant Grahn.

## II. Defendants' Motions for Summary Judgment Motions Based on the Affirmative Defense Provided by 42 U.S.C. § 1997e(a)

MDOC defendants Byrne, Croll, and Slusher, filed a motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a). (ECF No. 110). Plaintiff alleges that these defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. Specifically, plaintiff alleges that, on May 22, 2015, Nurse Slusher examined him and asked questions regarding his medical history, but failed to conduct tests on the rash on plaintiff's face that plaintiff believes could have resulted in an earlier diagnosis and earlier treatment of his shingles. (Amended Complaint. ¶¶ 26-35, ECF No. 40, PageID.385-86).

Plaintiff alleges that, at around 10:30 a.m. on May 23, 2015, Nurse Croll examined him, and, according to plaintiff, Nurse Croll failed to administer tests that would have resulted in an earlier diagnosis and treatment of his shingles. Nurse Croll examined plaintiff the next day and arranged for plaintiff to be transported outside the prison for evaluation and treatment. (*Id.* at ¶¶ 39-50, PageID.387-89).

Plaintiff alleges that Nurse Byrne directed that he be housed in medical isolation and canceled prescriptions that plaintiff had obtained outside the prison for treatment of his shingles. (*Id.* at ¶¶ 57, 65, PageID.390, 392).

Upon review, I find that the MDOC defendants have not carried their burden on the affirmative defense provided by 42 U.S.C. § 1997e(a) on any of plaintiff's

claims. Accordingly, I recommend that their motion for summary judgment be denied.

The Corizon defendants have also filed a motion for partial summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a). (ECF No.115). Upon review, I recommend that the motion be granted as to defendant Corizon Health and denied as to defendant Grahn.

A.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of

evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' " *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant

on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and " 'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.' " *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

B.    Failure to Exhaust Remedies Standards

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.  "This requirement is a strong one.  To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile."  *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216.  The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated that "no unexhausted claim may be considered."  549 U.S. at 220.  The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims.  549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law.  *Jones v. Bock*, 549 U.S. at 218-19.  In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).

Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[4] In *Sullivan v. Kasajaru*, 316 F. App'x 469 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days

---

[4]A copy of the policy directive is found in the record. *See* ECF No. 111-2 at PageID.1070-76.

of the attempted resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at *16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent for grievances regarding health care issues is the Regional Health Administrator or the Administrator's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent

-19-

to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. Id. at ¶ GG. The Grievance and Appeals Section forwards grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator is required to ensure that the grievance is investigated and a response provided to the Grievance and Appeals Section in a timely manner. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6

("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

C.  Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC).  He has filed numerous grievances and pursued some grievances through a Step III decision by the Grievance and Appeals Section.  (ECF No. 111-3, PageID.1078-1185).  The grievances related to plaintiff's claims are addressed below:

1.  Grievance No. RMI-15-06-1115-28i

On June 2, 2015, RMI's grievance coordinator received a grievance from plaintiff and assigned if Grievance No. RMI-15-06-1115-28i.  In this grievance, plaintiff claimed that Nurse Practitioner Grahn's decision to have him confined to segregation was retaliatory.  Plaintiff claimed that he met with Grahn on May 29, 2015, and that he was told that he would be confined to his cell in general population because he had only recently been discharged from the hospital.  Plaintiff claimed that, later, unspecified "staff" purportedly told him that Grahn had changed his mind. Plaintiff wrote: "I believe that Grahn ordered my unexplained segregated confinement in order to retaliate against me because of a grievance I filed against him and legal action I expressed an intent to take against him and other staff during our meeting on May 29th." Plaintiff's grievance was rejected at Step I because plaintiff failed to attempt to resolve the issue with staff as required by the MDOC's grievance policy directive.  Plaintiff argued in his Step II appeal that because he was

-21-

in segregation, circumstances beyond his control prevented him from conferring with Grahn before filing his grievance. The Step II response noted that plaintiff's grievance had been rejected at Step I because plaintiff "did not attempt to resolve this issue with staff involved prior to filing a grievance" and that plaintiff was claiming that being housed in segregation on quarantine constituted a circumstance beyond his control that prevented him from speaking with NP Grahn after he changed his mind about releasing [plaintiff] from segregation." The Step II response stated that under P.D. 03.02.130, plaintiff needed to attempt to resolve the issue with staff before filing a grievance. It further stated that this grievance contained "duplicative issues to RMI 15-06-1129-03E and RMI 15-16-1203-28A." Plaintiff's grievance was denied at Step II. On October 20, 2015, the rejection of plaintiff's grievance was upheld at Step III. (ECF No. 111-3, PageID.1136-40).

2. Grievance No. RMI-15-05-1085-12d1

On May 27, 2015, RMI's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. RMI-15-05-1085-12d1. Plaintiff complained that, on May 22, 2015, he had been seen by a nurse at his cell and later that day in RMI's infirmary by an unidentified male nurse practitioner. Plaintiff complained that the nurse practitioner "flatly refused to diagnose and treat the rash-like phenomenon." Plaintiff's grievance was denied at Step I. The medical record showed that plaintiff had been referred to a nurse practitioner, a treatment plan was initiated that included prescription medication and a follow-up examination by an optometrist was scheduled. (ECF No. 111-3, PageID.1171).

-22-

Plaintiff stated that his reason for appeal to Step II was that the nurse practitioner involved in this incident was Corey Grahn and nurse was Heidi Slusher. "Both flatly refused to diagnose [his] condition so that they would not have to render [] medical aid." (*Id.* at PageID.1167). Further, plaintiff stated that Grahn and Slusher "feigned ignorance of [his] condition to avoid giving [him] treatment so that they could cut costs and save money for their employer. It turned out that [he] had [s]hingles, and both knew that [he] had this condition, because they had enough experience between them to have recognized what I was suffering from." (*Id.*). The Step II response noted that plaintiff had identified Nurse Practitioner Grahn and Nurse Slusher being involved and that he was claiming that both refused to render medical aid. (*Id.* at PageID.1168). The Step II response also included a summary of the Step II investigation:

> Upon investigation of the Electronic Health Records (EHR), [o]n 5/22/15, Mr. Kitchen was seen by RN, who notes he reported he said he started a rash 3 days prior, the inmate complained of a rash to the right side of his forehead and swollen right eye, which was draining and causing blurry vision. No c/o pain when asked. The nurse notified the MP, orders for Tobermycin drops received for right eye and follow up with eye specialist (Dr. Doyle) who would be in on Tuesday. Grievant was also given triple antibiotic ointment with instructions for use and to contact HC if signs or symptoms get worse, patient verbalized understanding. <u>Treatment plan initiated</u>: mds and follow up, notify HC if worse.
>
> Grievant was seen in clinic on 5/23/12, the housing unit called and reported inmate is losing his sight, the nurse notes he was seen yesterday for the same issue and was prescribed medication. Inmate requesting to go to the ER, however, the RN explained that he was seen yesterday and the plan of action is set up at that encounter. RN assessed eyes and scheduled up a follow up with nursing on Monday. Mr. Kitchen was dispensed motrin and triple antibiotic ointment.

On 5/24/15 he was again seen for complaint of a rash and eye pain. Assessment discussed with MP, orders received to send the prisoner to the local ER (Sparrow Hospital in Ionia) for further evaluation/treatment. Sparrow Hospital said the prisoner had a tentative diagnosis of shingles and was being transferred to McClaren for an ophthalmic evaluation and possible admission.

(*Id.* at PageID.1168). Plaintiff's grievance was denied at Step II. (*Id.*). On November 17, 2015, the Step II decision was affirmed and plaintiff's Step III grievance appeal was denied. (*Id.* at PageID.1166).

3.    Grievance No. RMI-15-06-1138-12e1

On June 3, 2015, RMI's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. RMI-15-06-1138-12e1. The grievance was against Nurse Croll. Plaintiff complained that he saw Nurse Croll on May 23, 2015, and that Croll refused to treat, test, or diagnose his condition. Plaintiff's grievance was denied at Step I. The Step I response indicated that medical records showed that Nurse Croll evaluated plaintiff's condition and initiated a treatment plan which included medication and a follow-up examination Plaintiff's appeal was denied at Step II. On December 3, 2015, plaintiff's grievance was rejected because it was duplicative of Grievance No. RMI-15-05-1085. (ECF No. 111-3, PageID.1173-78).

4.    Grievance No. RMI-15-06-1157-12f

On June 4, 2015, RMI's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. RMI-15-06-1157-12f. In this grievance, plaintiff complained that on his return to prison, Nurse Byrne canceled prescriptions that plaintiff had received at the hospital. Plaintiff's grievance was denied at Step I.

On June 30, 2015, his appeal was denied at Step II.   On December 3, 2015, plaintiff's appeal was denied at Step III.   (ECF No.111-3, PageID.1180-85).

    D.    <u>Discussion</u>

        1.    MDOC Defendants

            a.    Defendant Byrne

Plaintiff is correct that the MDOC defendants have effectively conceded that his Eighth Amendment claim against defendant Byrne based on cancellation of prescriptions is exhausted.   (ECF No. 117 at PageID.1255-56) (citing ECF No. 49, PageID.530 and ECF No. 111 at PageID.1066).   In a discussion of Grievance No. RMI-15-06-1157-12f, the MDOC defendants stated:   "[I]n Grievance No. RMI-15-06-1157-12f, Kitchen complained that either RN Byrne or Nurse Practitioner Grahn canceled his prescriptions that the physician at McLaren Hospital had prescribed. [] It would appear that Kitchen has properly exhausted this issue as to RN Byrne." (ECF No. 38 at PageID.254).   Further, in a reply brief, the MDOC defendants stated, "Kitchen asserts that he properly exhausted his claim that RN Byrne canceled his prescriptions that the physician at McLaren Hospital had prescribed.   The MDOC Defendants conceded this issue in their brief."   (ECF No. 49 at PageID.530).   Again on March 6, 2017, defendant Byrne conceded that plaintiff exhausted his administrative remedies on this claim.   (ECF No. 111 at PageID.1066).   I find that defendant Byrne has conceded exhaustion on multiple occasions and has not carried her burden on the affirmative defense.

b.    Defendant Croll

Defendants' Exhibit B-12 is Grievance No. RMI-15-06-1138-12e1 and related documents.    (ECF No. 111-3, PageID.1172-78).    As noted above, this was a grievance against Nurse Croll.    However, a discussion of this grievance is notably absent from defendant Croll's brief.    (ECF No. 111 at PageID.1065-66).    Croll offers no reply to plaintiff's argument that he exhausted his claim against her through Grievance No. RMI-15-06-1138-12e1.    (ECF No. 117, PageID.1257-59).    I find that defendant Croll has not carried her burden on the affirmative defense.

c.    Defendant Slusher

Defendants' brief (ECF No. 111) contains no discussion of Grievance No. RMI-15-05-1085-12d1.    The grievance and related appeals appear as Exhibit B-11 to defendants' brief.    (ECF No. 111-3 at PageID.1165-71).    Where Exhibit B-11 is mentioned on page nine of defendant's brief (ECF No. 110 at PageID.1065), a discussion of some other grievance (RMI-15-06-1208-12z) appears.    The only argument defendant Slusher provides is a bare assertion that plaintiff complained that a nurse practitioner failed to provide proper treatment, and "[s]ince all of the MDOC defendants are Registered Nurses, this grievance [Defendants' Exhibit B-11] does not pertain to the allegations in Kitchen's Complaint and therefore does not exhaust any of Kitchen's current allegations."    (ECF No. 111 at PageID.1065).

I find that this argument is inadequate to carry defendant Slusher's burden on the affirmative defense.    Plaintiff explicitly mentioned a "nurse" in his initial grievance and in his Step II appeal specifically identified Slusher as that nurse.

-26-

(ECF No. 111-3 at PageID.1167, 1170).    Defendant Slusher elected not to file a reply to plaintiff's argument that he had exhausted his claim against Slusher through Grievance No. 15-05-1085-12D1.    (ECF No. 117 at PageID.1260).    I find that defendant Slusher has not carried her burden on the affirmative defense.

### 2.    Corizon Defendants

#### a.    Defendant Grahn

Defendant Grahn argues that he is entitled to summary judgment on two of plaintiff's claims against him:    plaintiff's claim that Grahn kept him in quarantine in retaliation for plaintiff's exercise of his First Amendment rights and violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause by failure to treat his vision loss.    (ECF No. 115 at PageID.1211-12).    Defendant Grahn is not seeking summary judgment based on the affirmative defense on plaintiff's Eighth Amendment Claims that Grahn was deliberately indifferent to plaintiff's serious medical needs on May 23, 2015, by not treating plaintiff for shingles, and by canceling medications that had been prescribed for plaintiff when he was outside the prison.    (*Id.*).

Grievance No. RMI-15-06-1115-28i was a grievance against defendant Grahn claiming that the decision to keep him in quarantine was retaliatory.    (ECF No. 111-3, PageID.1139).    The grievance was rejected at Step I because plaintiff "did not attempt to resolve this [issue] with Grahn after he changed his mind."    (ECF No. 111-3, PageID.1140).    Policy Directive 03.02.130 ¶ P, requires that, "[p]rior to submitting a written grievance, the grievant shall attempt to resolve the issue with

the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control[.]" (ECF No. 111-2 at PageID.1072). The Step II response notes that plaintiff's reason for appeal was that he was unable to attempt to resolve the issue because he was in quarantine. (ECF No. 111-3 at PageID.1138). However, the Step II response contains no coherent discussion attempting to engage the question of how plaintiff could have attempted to resolve this issue with Grahn while he was held in quarantine or even a statement that plaintiff failed to make a timely attempt after he was released from quarantine. The most that can be said for this Step II appeal response is that plaintiff's appeal was "denied" at Step II (*Id.*) and that the "rejection" of this grievance was upheld at Step III. (*Id.* at PageID.1136). "As long as the 'procedural default' rejection is clear, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Grear v. Gelabert*, 1:07-cv-203, 2008 WL 474098, at * 2 n.1 (W.D. Mich. Feb. 15, 2008). I find that the MDOC's rejection of Grievance No. RMI-15-06-1115-28i lacks the requisite clarity necessary to provide a foundation for granting defendant Grahn's motion for summary judgment on plaintiff's retaliation claim.

Defendant Grahn devotes only four sentences to his argument that plaintiff failed to properly exhaust his "vision loss" claim and addresses only one of his grievances. (ECF No. 115 at PageID.1212). Grahn argues that plaintiff did not name Grahn at Step I in Grievance No. RMI-15-08-1853-12f and that plaintiff referred to him as Graham at Step II. I agree that this grievance, which added a

reference at Step II as "Nurse Graham" (ECF No. 111-3 at PageID.1111, 1113) did not properly exhaust any claim against defendant Grahn. The aforementioned grievance was not the only grievance plaintiff filed, however.

Defendant Grahn did not address plaintiff's arguments that he exhausted his vision loss claim through other grievances. (ECF No. 119 at PageID.1278). I find that plaintiff adequately raised the issue of "vision loss" stemming from the alleged withholding of medication (ECF No. 111-3 at PageID.1166-71, 1180-85) and that defendant Grahn has not carried her burden on the affirmative defense.

b.      Defendant Corizon Health, Inc.

Defendant Corizon Health argues that none of the grievances that plaintiff pursued through the MDOC's grievance process exhausted plaintiff's claims against Corizon. (ECF No. 115 at PageID.1196, 1211). Plaintiff cites no legal authority in support of his argument that he was not required to file any grievance against Corizon. (ECF No. 119 at PageID.1272). Plaintiff's claims against Corizon clearly fall within the broad scope of MDOC's grievance process requirements because his is claiming "unsatisfactory conditions of confinement," and as such his grievance must name "all those involved in the issue being grieved," not simply "staff persons" as plaintiff suggests.[5] (See P.D. 03.02.130 ¶¶ E, R, ECF No. 111-2 at PageID.1070, 1072).

---

[5] The PLRA established an "invigorated" exhaustion requirement. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *see also Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

The MDOC's policy directive does not exclude claims against corporations from grievance process requirements. It is well established that Michigan prisoners must exhaust their administrative remedies against corporate defendants. *See e.g.*, *Maldonadodeher v. Corizon Med. Servs., Inc.*, No. 2:16-cv-21, 2016 WL 6208705, at *4 (W.D. Mich. Aug. 11, 2016); *McCormick v. Corizon Health, Inc.*, No. 13-11098, 2014 WL 897371 (E.D. Mich. Mar. 6, 2014); *Tate v. Corr. Med. Servs.*, No. 09-cv-10698, 2009 WL 2923162, at *4 (E.D. Mich. Dec. 11, 2009).

Plaintiff argues that he "named" Corizon in Grievance No. RMI-15-11-2583-12G3. (ECF No. 119 at PageID.1272). Although plaintiff mentioned Corizon in this grievance (ECF No. 54 at PageID.559), he did not claim that he suffered injury stemming from any Corizon policy. Further, plaintiff filed this lawsuit months before he received a Step III decision regarding this grievance. (*Id.* at PageID.563). Plaintiff did not exhaust claims against Corizon through mere references to an employer in various other grievances. I find that defendant Corizon Health, Incorporated has carried its burden under 42 U.S.C. § 1997e(a) and is entitled to dismissal of all plaintiff's claims against it.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Corizon defendants' motion for partial dismissal and partial summary judgment (ECF No. 115) be granted in part and denied in part. I recommend that the Rule 12(b)(6) portion of the motion be granted. I recommend that the summary judgment portion of the Corizon defendants' motion for summary judgment based on the affirmative defense provided

by 42 U.S.C. § 1997e(a) be granted as to defendant Corizon Health, Incorporated and denied as to defendant Grahn. I recommend that plaintiff's purported state law claims against all defendants be dismissed pursuant to the statutory authority provided by 28 U.S.C. §§ 1915(e)(2), 1915A. I recommend that the motion for summary judgment by MDOC defendants Croll, Byrne, and Slusher based on the affirmative defense of lack of exhaustion of administrative remedies (ECF No. 110) be denied.

If this report and recommendation is adopted in its entirety, plaintiff's remaining claims will be for damages against defendants Grahn, Croll, Byrne, Slusher, Schultz, and Doyle under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.


Dated:   November 10, 2017          /s/   Phillip J. Green                        
                                    United States Magistrate Judge


## <u>NOTICE TO PARTIES</u>

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).